ROBERT L. HENRY ET AL., Respondents, v. E. F. HINDS and FANNY G. RICE.—FANNY G. RICE, Appellant.

18a 497
97 61
33a 34
33a 183
18 497'
38 62
18 497
97 ²336

Kansas City Court of Appeals, June 15, 1885.

1.  PLEADING—PRACTICE—INSTRUCTIONS.—Instructions must be framed with regard to the issues made by the pleadings. Where a petition to enforce a mechanic's lien alleged that the demand became due on a certain day, and that within four months thereafter, the account, etc., for the lien was filed ; this was a material averment, and an answer denying the want of knowledge on the part of defendant is bad, as not conforming to the statute. Such averment is not a mere conclusion of law, and not being denied, nor any new fact pleaded in contradiction of it, the allegation stood as if the answer had admitted it in express terms.

2.  MECHANIC'S LIEN— CONTRACT PRICE OF WORK PAID FOR BEFORE NOTICE.—Where in a suit by a material man to enforce the statutory lien for materials furnished to a contractor for a building, against the property, it was pleaded by the owner, and established by the proof, that under and pursuant to the owners' contract with the contractor, she fully paid him the whole contract price for the building, every dollar of which was applied to the liquidation of claims for work and materials thereabouts ; and did so in good faith and without any knowledge whatever of the existence of plaintiffs' demand. *Held*, that the contractor himself could not enforce a lien beyond the contract price, and that the sub-contractor or material man, can occupy in this respect, no better position. That he who deals with a special agent, must take notice of the extent of his authority and the limitations upon his·office. That the basis for the lien given by the statute against the property owner is the principle of substitution ; and the party substituted by operation of law, could occupy no better position than he for whom he is substituted. That there is created by the statute, a privity between a·sub-contractor and contractor, and the sub-contractor, is in law, presumed to have notice of the terms of the contract between the owner and the contractor and the looking to the building, and not to the contractor's credit is an admission of knowledge of the contract relation between the owner and contractor. *Held*, further, that if the owner paid the contractor in full the contract price, in good faith, without knowledge of the plaintiffs' demand, and that the money so paid went to the satisfaction of claims for work done and materials furnished on the building, it is, in legal effect, the same as if the owner had paid the contract money directly for the work and materials to the subordinates,

and that her property cannot be subjected to the plaintiffs' demand
for the excess. *Garnett v. Berry*, 3 Mo. App. 205.

APPEAL from Jackson Circuit Court, HON. F. M.
BLACK, J.

*Reversed and remanded.*

Statement of case by the court.

This is an action to enforce a mechanic's lien. The
petition alleges in substance, that the defendant, E. F.
Hinds, is indebted to plaintiffs in the sum of $760.96 for
materials furnished by them at the request of and under
a contract with said Hinds. The petition then sets out
the account in full, beginning on the 20th day of July,
1881, and ending on the 2d day of March, 1882, aggregat-
ing $1,930.92, with credits amounting to $1,169.96, leaving
a balance of $760.96. That said materials were furnished
for and used in the construction of a certain build-
ing on the lot of defendant, Fannie G. Rice, situate in
Kansas City, Missouri ; and that said Hinds was the orig-
inal contractor with said Rice for the erection of said
building ; that said demand became due on the 2d day of
March, 1882, and within four months thereafter the plain-
tiff filed said account in the proper clerk's office for the
purpose of securing a lien on said building, to-wit : on
the 11th day of May, 1882, duly verified and describing
said property ; that more than ten days prior to filing
said account the plaintiffs gave notice to said Rice of said
demand. The prayer is for judgment against said Hinds
for the debt and for the foreclosure of the lien.

Hinds made default. The defendant Rice made
answer, denying any knowledge of the existence of the
alleged partnership between the plaintiffs, or the exis-
tence of said debt against Hinds, or whether the said
materials were furnished by plaintiffs, or were used in the
building. It then admitted that said Hinds was the
original contractor with her for the erection of said build-
ing, and that she is the owner of the property described
in plaintiffs' petition, and defendant admits that plaintiffs
filed an account of their claim as alleged, and served a

notice of their claim prior thereto, as is alleged in the petition. But the defendant states that plaintiffs are not entitled to the enforcement of their alleged lien against the aforesaid property, because she says that the said Hinds was the original or principal contractor with her for the erection of said building and improvements, and was the lowest and best bidder therefor at the price of $13,-800 ; and if any labor or materials were furnished to said Hinds by plaintiffs, or used in said building and improvements, said materials were furnished said Hinds upon his own credit, and upon his sole responsibility ; and that he alone was looked to for payment by plaintiffs, and that payments have been made therefor by said Hinds and placed to his individual credit by plaintiffs without the knowledge, consent, authority or intervention in any manner by this defendant ; and that plaintiffs did not look to said building as security for said materials, but to the credit of defendant Hinds.

For a further answer and defence, defendant says that at the date of the service of said notice of claim by plaintiffs, and at the date of filing of said account thereof, to-wit: About the 14th day of February, 1882, and without any knowledge or notice whatever of the existence of any claim of the plaintiffs against said building or otherwise, this defendant had paid to said Hinds the full amount due and payable to him under said contract ; and that nothing whatever was due or owing from this defendant to said Hinds at the date of said serving of notice and filing of claim as aforesaid, or either of them.

And for further answer and defence, defendant says that the whole of the contract price for said building and improvements, so paid to said Hinds as aforesaid, was paid out and applied by said Hinds exclusively towards the payment and satisfaction of claims of sub-contractors and material men and day laborers furnishing work, labor and materials in the erection of said building and improvements, and that no part thereof was otherwise applied by said Hinds, and that no part thereof was retained by him for his own work and services on said building, but the whole amount thereof was paid to plaintiffs and others

to the extent of the contract price for said building and improvements aforesaid. Wherefore defendant prays judgment that her property is not liable to be charged with the alleged claim, and for judgment accordingly, and for her costs.

The reply tendered the general issue.

The evidence on behalf of plaintiffs tended to prove the allegations of the petition ; and the evidence on behalf of the defendant tended to prove the matters pleaded in the answer hereinafter discussed.

The contract between Hinds and Miss Rice was in writing, by which Hinds was to furnish all the materials and do all the work, and complete the building by the first day of December, 1881. The work, etc., were to be paid for in installments as the same progressed, leaving a balance of $3,300 unpaid, which was to be paid on the completion of the building and its acceptance by the architect. The aggregate cost of the building was $13,800.

The cause was tried before a jury.

At the request of the plaintiffs the court declared the law as follows :

"It is admitted in the pleadings in this cause that the defendant Hinds was the contractor with the defendant Rice for the construction of the buildings mentioned in the pleadings ; that defendant Rice is the owner of the property in question, and that the plaintiffs on the 11th day of May, 1882, filed an account with the clerk of the circuit court, as alleged, and that the plaintiffs served notice of their claim prior thereto, as alleged in the petition. If you find from all the evidence in this cause, that Henry, Barker & Coatesworth, by written contract with defendant Hinds, sold to said E. F. Hinds, the lumber and materials mentioned in the petition, to be used in the construction of the building and appurtenances specified in the pleadings ; that said lumber and materials were actually used by said Hinds in the construction of said building and appurtenances under the contract between him and defendant Rice, read in evidence, and under additional agreement between them for extra work ; that the lien filed with the circuit clerk was filed within four

months after the indebtedness accrued; that Barker ceased
to be a member of the firm of Henry, Barker & Coates-
worth before all the material had been furnished, and
these plaintiffs, by assignment from said Barker, became
entitled to his interest in the lumber and material before
that time furnished, and that these plaintiffs constitute
the firm of Henry Brothers & Coatesworth, then the
plaintiffs are entitled to have and recover the reasonable
and fair value of all the materials so sold and actually
used in the construction of said building and appurten-
ances, less all credits and payments made thereon, and
they are also entitled to have their mechanic's lien en-
forced thereon. The date of the accruing of the account
will be the date that the last item of lumber was actually
furnished.

"The court instructs the jury, that the fact that
Fannie G. Rice paid to the defendant Hinds the full
amount due on her contract with him for the erection of
the building and appurtenances described in the plain-
tiffs' petition, does not affect the plaintiffs' right to recover
in this case.

"The court instructs the jury that plaintiffs are en-
titled to interest on the amount due them from the de-
fendant Hinds from the date they made demand on said
Hinds for the same, at the rate of six per cent. per annum
to date."

The defendant made request, but the court refused
to give the following instructions to the jury:

"1. That if they shall believe from the evidence that
plaintiffs furnished the materials sued for, in the amount
and for the purposes stated in the petition to defendant
Hinds, and that they were used, as is alleged, and that
plaintiffs served notice and filed claim within the time
provided by law in such cases; yet, if they shall further
believe that the said materials were furnished to said
Hinds, exclusively on his own credit, and that he alone
was looked to for payment, then the said claim is not en-
titled to be enforced against the building of defendant
Rice, and the charging of said materials to said Hinds,
and the credit to him of payments made by him on said

account, and the course of business with said Hinds, is evidence proper to be considered in determining whether such credit was given said Hinds, and that he alone was looked to for payment.

"2. The court further instructs the jury that if they shall believe from the evidence, that on or about the 18th of June, 1881, the defendant Rice made a contract with defendant Hinds to furnish all materials and erect, build and finish the house, against which the plaintiffs attempt to enforce their alleged lien, for a consideration therein agreed upon between them, then there is no liability on her part, except to the party with whom she contracted. And, if plaintiffs, with the knowledge that a contract existed between defendant Hinds and defendant Rice, whereby said Hinds agreed to furnish materials and build and finish the houses as aforesaid, did furnish to said Hinds materials as is stated in the petition, plaintiffs have no claim against defendant Rice, the owner of the property; or, if plaintiffs did furnish to said Hinds materials as stated as aforesaid, and if they were used in the building of defendant Rice, under a separate contract with said Hinds and on his account, plaintiffs have no claim against defendant Rice, the owner of the property, nor to have their said claim enforced against said property; and plaintiffs are presumed to have notice of the existence of such contract, a knowledge of its terms and the rights and obligations of the parties thereunder.

"3. The court further instructs the jury that if they shall believe from the evidence, that the defendant Rice had paid the defendant Hinds the full amount due to him, as original contractor for the building of the house, against which an alleged lien is herein sought to be enforced by plaintiffs, long before the service of notice of any claim made by plaintiffs, and long before the filing of an account thereof in the office of the clerk of the circuit court of Jackson county, to-wit, about the 14th of February, 1882, and without any knowledge or information whatever of the existence of any claim held by plaintiffs, or of any purpose to enforce it against her said property; then, the serving of notice and filing of claim of lien by the plain-

tiffs, even though within the period prescribed by statute, do not entitle the plaintiffs to enforce the said claim against the property of defendant Rice.

"4. The court further instructs the jury that if they shall believe from the evidence, that the defendant Rice had paid to said Hinds the full amount due him as original contractor as aforesaid, at the date aforesaid, and before the serving of notice and filing of claim aforesaid, and without any knowledge of the existence thereof as aforesaid; and that the said Hinds did pay out, apply and appropriate the whole of the contract price so paid to him as original contractor, as aforesaid, to the payment for work, labor and materials furnished and used in the erection of buildings contracted for with defendant Rice, and did not retain any part thereof for his own work, labor and services under said contract; then the plaintiffs are not entitled to enforce their said claim against the property of defendant Rice, even though a larger part of such work, labor and materials was paid in full and in the case of the plaintiffs the amount sued for remains unpaid.

"5. The court further instructs the jury that the amount of debt secured by lien in this case, under the statute of this state, is commensurate with the contract price; and there is no privity of contract between the owner and sub-contractor; that, therefore, if the jury believe from the evidence in this case, that the whole of the contract price was paid to defendant Hinds at the date aforesaid, and by him paid, applied and appropriated to the work, labor and materials used in the construction of the buildings for defendant Rice, under said contract; and that the whole of said contract was so paid, applied and appropriated long before the notice of the claim was served upon the defendant Rice, or any account of claim filed, and without any knowledge by defendant Rice of the existence of any claim on the part of plaintiffs, then the plaintiffs are not entitled to enforce their alleged claim against the property of defendant Rice.

"6. The court further instructs the jury that if they believe from the evidence that the materials furnished by plaintiffs, which went into the construction of

the building of the defendant Rice, under the contract with said Hinds, were all furnished at a period not later than December 5, 1881, and that the materials furnished after that date by plaintiffs went into work done as extras, and not included in said contract, then the said notice and claim were not made and filed within the time provided by law, as regards the materials furnished up to December 5, 1881, aforesaid ; and the plaintiffs are, in that case, entitled in any event to recover no more than the reasonable worth of the materials so furnished subsequent to said fifth of December, 1881, as against the property of defendant Rice."

The jury returned a verdict for plaintiffs for the full amount of their claim with interest, and found all the issues for plaintiffs. Thereupon the court rendered judgment against Hinds for the debt, and for the enforcement of the lien against the property of defendant Rice. From this judgment she appealed.

JAS. F. MISTER, for the appellant Rice.

I. It is manifest from the statement of the case, that the result reached involves consequences of peculiar hardship to defendant Rice, and *without her fault*, since it appears that she had paid to the contractor the full amount of the contract price several weeks before she had any information whatever of the existence of plaintiffs' claim, and it also appears that the contractor appropriated every cent of the full payment to him towards the payment for work, labor and materials used in the construction of the building under his contract with Rice.

II. In order to enforce a lien, *against the owner* of property, upon a building for furnishing materials, it must appear that it was done under a contract with the owner and contractor for the building, and not for the contractor *on his own credit*. *House v. Thompson*, 36 Mo. 450 ; *House v. Carroll*, 37 Mo. 578 ; *Squires v. Fithian's Adm'r*, 27 Mo. 134.

III. The relation of principal and agent is not established by the statute between the owner of real estate and the contractor. *Deardorff v. Evapart*, 74 Mo. 37 ;

*Simmons, etc., v. Carrier*, 60 Mo. 581 ; *Phillibert v. Smith*, 57 Mo. 211.

IV. If the materials were furnished as two separate acts, under two contracts, each *must of necessity* stand upon its merits ; but if *it was all one transaction*, then, for the purpose of ascertaining the time within which the lien should be filed, it all relates to the time of furnishing the last item. The *determination*, whether it was *one transaction* or *two*, *pertains to the jury* under proper instructions. *Livermore v. Wright*, 33 Mo. 31 ; *Shmeilling v. Ewing*, 57 Mo. 78; *Allen v. Mining Co.*, 73 Mo. 688 ; *Williams v. Porter*, 51 Mo. 441; *Scott v. Cook*, 8 Mo. App. 192.

V. " The whole theory of the mechanic's lien law is founded upon contract. The owner's contract with the contractor empowers the latter to procure material from the material man, who is thus, in his secondary or subsidiary position, placed in contract relation with the owner. *But this contract relation can have no more enlarged extent than the original contract.* The contractor, whose *quasi* agency for the owner enables him to create it, *cannot bind his principal beyond the authority* conferred. The material man or sub-contractor, *deriving all his claims* from the original contract, *must look to its terms* for the extent and limit of his capacity to fasten a lien upon the owner's premises. * * * The law and the contract invite supplies from the material man to the *amount of the contract price.*" *Garnett v. Berry*, 3 Mo. App. 205.

VI. The issues raised by the pleadings were not even submitted to the jury, because of refusal of all instructions asked by appellant Rice, and the jury were practically directed to find for the plaintiffs. These issues were : (1) That materials were furnished to contractor on his own credit. (2) That before notice or filing of claim, Rice had paid to contractor the full amount of the contract price. (3) The whole amount of contract price so paid, was paid over to sub-contractors, material men and day laborers, and no part thereof was otherwise applied.

VII. The refusal of instruction number six, asked

by Rice, was error. It refers to *two separate contracts,* and limits the recovery of plaintiffs to a few dollars on the *last* contract. The court's instruction determines this claim as matter of law when it "pertains to the jury" under proper instructions. *Livermore v. Wright,* 33 Mo. 31 ; *Allen v. Mining Co.,* 73 Mo. 688 ; *Williams v. Porter,* 51 Mo. 444.

W. J. STRONG, for the respondents.

I. The court was justified in refusing the first instruction asked for defendant Rice, relating to the giving of credit to the contractor, Hinds, for the reason that there was no evidence to sustain such an instruction. The person who raises this issue must prove it affirmatively. Phillips on Mechanic's Liens (1st Ed.) sect. 124, and cases cited.

II. Defendant Rice complains of the refusal of the second, third, fourth and fifth instructions asked for her. These relate to the question of the right of respondents to enforce their lien against the property of defendant Rice, when she had paid the full contract price to the contractor, and claim that the material men are presumed to have notice of the contract between the contractor and owner. The statute does not limit the lien of material men to the "extent of the contract price between the owner and contractor," but says they shall have a " lien for such materials upon the building." Sect. 3172, Rev. Stat. Mo. (1879).

III. The rule laid down by the supreme court in regard to the construction of the mechanic's lien law is, that our statute must be construed literally so as to advance the remedy. *Putnam v. Ross,* 46 Mo. 337 ; *Oster v. Rabeman,* 46 Mo. 595 ; *De Witt v. Smith,* 63 Mo. 263. That court in *Hilliker v. Francisco* (65 Mo. 598 ), indicated clearly that the right of the material man is not limited to the contract price between the owner and builder. And the cases cited by appellant from other states where the right to recover is limited to the contract price.

IV. The case of *Garnett v. Berry* (3 Mo App. Rep.

197), does not sustain the position of appellant. The issue in that case was whether the plaintiff could bind the estate of his wife when the contract was made by the husband in his own behalf and not as the agent of the wife, and the remark of the court as to the contract price, was merely a *dictum* of the court and not a well considered opinion, because the point was not in issue and not discussed by counsel. It is also in direct opposition to *Hilliker v. Francisco* ( 65 Mo. 598 ), and cannot have much weight. And even *that* case does not sustain appellant's position, for it says, " but voluntary payments to the builder are not to be considered in this amount against other persons." The payments made by Miss Rice show the greatest disregard of the rights of the material men.

V. The evidence is clear and undisputed that there was but *one contract* between the plaintiffs and contractor for the furnishing of materials. Besides the statute of limitations is not pleaded, nor was the defence set up that part of the work ( materials furnished ) was done under separate contracts.

VI. The plaintiffs' statement in the petition regarding the terms when the materials were furnished, and when the whole amount due on the account accrued, are not in any manner denied in the defendant's answer—not even by way of general denial. A party who relies upon the statute of limitations, must plead it, otherwise it is presumed that he waives it. *Stiles v. Smith*, 55 Mo. 363 ; *Hearne v. R. R.*, 53 Mo. 324 ; *Chouteau v. Allen*, 70 Mo. 290 ; *State ex rel., etc., v. Spencer*, 79 Mo. 314.

VII. The owner, at best, cannot pay out the full contract price to the contractor without pro-rating among those having claims against the contractor, and then set up that she has paid it all to the contractor as a defence.

Opinion by PHILIPS, P. J.

1. It is insisted by appellant ( defendant below ) that the court erred in refusing the sixth instruction asked by her. This instruction announced a correct proposition of law, and there was evidence to support it. *Livermore v. Wright*, 33 Mo. 31 ; Phillips on Mechanics' Liens, sec-

tions 322 and 324. But the difficulty in defendant's way is that she has not, in my opinion, sufficiently raised this issue by her answer. Instructions must be framed with regard to the issues made in the pleading. *Benson v. R. R. Co.*, 78 Mo. 504. The petition, in conformity with the statutory requirement in such actions, distinctly alleged that the demand became due on the second day of March, 1882, and that within four months thereafter, to-wit, on the eleventh day of May, 1882, they filed the account, etc., for the lien. This was a material averment under the statute. Section 3179, Revised Statutes. The statute further provides (section 3545) that, "Every material allegation of the petition not controverted by the answer, shall, for the purposes of the action, be taken as true."

We fail to find in the answer any denial of this allegation. Even as to the matters sought to be denied, the plea is bad, as it only avers the want of knowledge on the part of the defendant. *Revely v. Skinner*, 33 Mo. 98; *Watson v. Hawkins*, 60 Mo. 550.

It is not correct to say that the matter averred by the petition is a mere conclusion of law. It alleges a distinct fact, that the demand became due on a certain named day, and then sets out the items of the account, which show *prima facie* a running account, the last date of the items corresponding with the averment of the petition. As the defendant did not deny this allegation, nor plead any new fact in contradiction of it, the allegation stood as if the answer had admitted in express terms, that the demand did become due on that day ; which would have been equivalent to saying it did not accrue on any other day.

2. The important question presented by this appeal is, that portion of the defence and proof, which pleaded and established, that under and pursuant to defendant's contract with the contractor, Hinds, she fully paid him the whole contract price for the building, every dollar of which was applied to the liquidation of claims for work and materials thereabouts ; that she did so in good faith, without any knowledge whatever of the existence of plaintiffs' demand.

This raises a question of great practical importance, and one that ought to be definitely settled, so far as a direct decision can determine it. Counsel for respondent contends that this question was passed upon by the supreme court of this state in *Hilliker v. Francis* 65 (Mo. 598).

If that be so, and the decision is the latest holding of the court on the subject, we should feel bound by it. But a careful examination of the case satisfies my mind that this question, in its broad and true significance, was neither in the mind of counsel who argued the case, nor of the learned judge who delivered the opinion. The principal questions at issue there were, whether the proper parties were in court; the settlement interposed as a defence by defendants; the right of the defendant bank to take an appeal, and sufficiency of the account filed as the basis for the lien.

The phraseology of the instruction numbered four, and the language of Judge Henry in adverting casually to it, plainly indicate that it was intended merely to bear on the question, as to whether the sub-contractor could recover the contract price between the owner and the contractor, or the reasonable value of the materials. So Judge Henry says, as the instruction did not assert that the bank is liable to plaintiff for the price agreed upon by the contractors, without regard to the actual value, and there was no evidence to show that the work, etc., were worth less than the contract price, and the question discussed by counsel is not presented by the instruction, it is not objectionable. This is the whole of it. It would be quite unsatisfactory to regard such a decision as disposing of so grave a question. No such issue in fact was presented by the record.

The first section of the Mechanic's Lien Law (section 3172 Revised Statutes), gives to every mechanic, or other person, who shall do any work upon, or furnish any material for any building, etc., under or by virtue of any contract with the owner or his agent, contractor or subcontractor, a lien upon such building.

It must be admitted that this language is quite broad.

But it should receive such construction as, while upholding its true object and preserving its spirit, yet, would not allow it to become an intolerable oppression, or to impinge upon deep rooted principles of universal justice, or to strike down the inviolability of property rights, against the consent of the owner. No court has as yet exhibited the temerity to assert that the contractor, himself, could enforce a lien for one dollar's worth of work or material beyond his contract price. By the express provision of the statute, his right to the lien depends and rests upon the existence of a *contract* between him and the property owner. That his sub-contractor, who never saw nor communicated with the owner, can occupy in this respect a better position than the principal contractor, must strike the judicial mind as violative of every principle of recognized law and every dictate of justice. Such a right cannot stand on the doctrine of principal and agency. *Deardorff v. Everhartt*, 74 Mo. 37. He who deals with a special agent must take notice of the extent of his authority and the limitations upon his office.

The sub-contractor is, sometimes, designated as a *quasi* agent. How the *quasi* agent can have a wider range of powers than the full agent is not apparent. It is to make the prefix greater than that which it qualifies. The only rational basis for the legislation giving the sub-contractor a lien against the property owner, is the principle of substitution. By which, it would seem, the party substituted, by operation of law, could occupy no better situation than he for whom he is substituted.

The statute, without the aid or assent of the owner, creates a privity between a sub-contractor and contractor. So it is held, and properly, that the sub-contractor is in law presumed to have notice of the terms of the contract between the owner and the contractor. *Stewart v. Wright*, 52 Iowa 335; *Garnett v. Berry*, 3 Mo. App. 205; *Scott v. Cook*, 8 Mo. App. 193; *Jensen v. Brown*, 2 Col. 697. "The material man, or sub-contractor, deriving all his claims from the original contract, must look to its terms for the extent and limits of his capacity to fasten

a lien upon the owner's property." *Garnett v. Berry*, *supra*.

"All such persons are presumed to have notice of the existence of such contract, a general knowledge of its terms, and the rights and obligations of the parties thereto, and to have taken sub-contractor's contributed labor and furnished materials, in strict subordination to such terms, relative rights and obligations, in respect to the amount which the owner may be required to pay under his contract." *Jensen v. Brown*, *supra*.

So it was held in *Bowen v. Aubry, et al.* ( 22 Cal. 566 ), that where the contract between the owner and contractor for the erection of a building, stipulated that the contractor would not encumber, nor suffer to be encumbered, the said building or lot, by any mechanic's lien, a subcontractor was held to be affected with notice of the provisions of said contract, and that he was thereby precluded from acquiring a mechanic's lien upon the building for the work done by him.

It is further held, that the mere fact of knowledge of the existence of the contract in such a case, is sufficient to put the sub-contractor upon inquiry, and he is to be considered as having notice of the contents and stipulations of contract.   "And the owner of the property cannot be held liable or bound to any extent beyond the terms of the original contract.   Any other rule would place the owner and his property completely at the mercy of the contractor ; would give the contractor power without any authority whatever, to make contracts binding the owner and his property.   The owner cannot be held liable upon the contract between the original contractor and sub-contractor, as there is no privity of contract between them."

Equally well settled is it, that, if the sub-contractor furnishes the material upon the sole credit of the contractor, he would not be entitled to any lien upon the building.   Phillips on Mechanics' Liens, sect. 116 ; *Chapin v. Peran*, 30 Conn. 461 ; *Clarke v. Hall*, 10 Kans. 40 ; *Presbyterian Church v. Allison*, 10 Pa. 413 ; *Prescott v. Maxwell*, 48 Ill. 82.

It must, therefore, stand to reason, that the very fact that the sub-contractor, as in the case at bar, claims that he did not give the credit solely to the contractor, but looked to the building for his security, is an admission that he knew of the contract relation between the owner and contractor. It is not too much then to say, that common prudence and good faith would require of him that he should inform himself of the dealings between the parties to the contract, and advise the owner of the property that he was furnishing material upon the faith of the property. The St. Louis court of appeals, in the cases *supra*, hold the sub-contractor to this knowledge, and decide that he cannot bind the property of the owner for a greater sum than the contract price between him and the contractor. "Were it otherwise," says Lewis, J., "a man might contract for the building of a house at five thousand dollars, and afterwards find liens for ten thousand dollars established against it— more, perhaps, than the value of lot and building together. This would, in effect, be transferring to one man the property of another without his consent, directly or indirectly secured. Such a result would be repugnant to the fundamental principles of civil government."

It is of supreme importance that a stable rule should exist on this subject, common to all the appellate courts of the state. It is no answer to all this to say, that the owner is not injured where more material or work goes into his building than he contracted for, as he gets the benefit of the improvement in the enhanced value of his property. To my mind there is one irrefutable answer to this suggestion : The dominion of the citizen over his private property should be held supreme. It is this sense that makes him independent and self-assertive. It is the rich soil in which a free government strikes deep its roots. For its protection society exists. For its maintenance laws should be made and courts established. Private property cannot be taken for private use against the consent of the owner, with or without compensation. No man has the right to go to the citizen, unbidden, and say : "I will confer a benefit on you by improving your property

and enhancing its value, but you must pay me for the office, or I will take your property away from you." The owner may be able and willing to have erected on his lot of ground a house worth five thousand dollars, but if one costing ten thousand dollars be placed there, he is unable to pay for it. If a lien be enforced against it for the ten thousand dollars, he may lose his house and the lot, and thus be made homeless.

Rothwick, J., in *Stewart v. Wright, supra*, with much reason, questioned the power of the legislature to require that the citizen should be liable to pay for his building twice, by paying off the claims of sub-contractors who assert liens after he has paid the contract price to the contractor, in accordance with his bond. In the above case the court hold that the owner, who, in good faith, without notice of any outstanding claims, pays off the contractor according to the terms of the contract, cannot have his property subjected thereafter to the sub-contractor's lien. The court say : " Any other rule, followed to its logical conclusion, would effectually prevent a person from complying with the contract, which all the world must admit, he has the right to make and perform."

In *McAlpin v. Duncan* (16 Cal. 126), under a statute differing in no material respect from ours, the court say :

"If it were designed to give to the sub-contractor a lien upon the property of the owner for the entire amount of the sub-contract, without any regard to the amount of the principal contract, a very curious anomaly would exist and the whole property of the owner might be placed at the discretion of the contractor to be encumbered by him as he chose. We think all that can be gathered from this act is, that sub-contractors have a lien upon the property to the extent of the contract price of the principal contractor ; these persons must give notice of their claims to the owner, or the mere existence of such claims will not prevent the owner from paying the contractor, and thereby discharging himself from the debt. Unless this view is correct the grossest absurdities appear.

"We have in the first place, a valid contract, with

Vol. xviii—33

nothing appearing against it, which yet can be enforced, a clear right of action on the part of the contractor, with no defence by the defendant, and yet which cannot be enforced ; *or*, which the plaintiff may enforce at law, and yet, if the defendant pays the money, with or without suit, he must pay it again. Innumerable liens must be created without the knowledge of the owner, for which he might be held liable, while the owner could never pay anything until after long delays, whatever the terms of the contract, or the contractor's necessity for money, unless payment were made at the expense or at the risk of the payer.

"These sub-contractors have only to notify their claims to the owner in order to secure them.

"If they, by their own laches, suffer the owner to pay over the money according to the terms of his contract, they ought not to complain, for it was by their own neglect of a very simple duty that the loss accrued ; and it would be unjust to make the owner pay the second time because of that neglect."

The same doctrine is re-asserted in *Renton v. Conley* (49 Cal. 185.) It is also maintained by the supreme court of Colorado in *Jensen et al. v. Brown, supra.*

So in *Greenway v. Turner* (4 Md. 296), it is held that the party furnishing material to the builder is bound to see that he is dealing with a person who is an actual contractor at the time the materials are furnished. The owner is not required to give public notice through the papers of the termination of his contract with the builder, nor personal notice to the sub-contractor, in order to protect himself against the acts of the builder.

In some of the states, as in Illinois (67 Ill. 467), the statutes prescribe that the sub-contractor has twenty days after completion of the work, etc., in which to give the owner notice of his claim. In such case, of course, if the owner paid the contractor before the expiration of the twenty days, he would do so at his own peril. In some other states it is provided by statute that the contractor cannot maintain action against the owner until after the time limited for giving the notice has expired.

But we have no such provisions in our statute. The sub-contractor is only required to give the owner ten days' notice before filing his account. While, perhaps, such notice might operate, *sub specie*, as an equitable garnishment of the funds in the hands of the owner, its main object, I apprehend, is to afford the owner an opportunity to pay the sub-contractor's debt before his property is libeled by the filing of the lien.

The conclusion reached, and what I hold, under the state of facts disclosed by this record, is, that if the defendant paid the contractor, Hinds, in full the contract price, in good faith, without knowledge of the plaintiffs' demand, and that the money so paid went to the satisfaction of claims for work done and materials furnished on the building, it is, in legal effect, the same as if the defendant had paid the contract money directly for the work and materials to the subordinates, and that her property cannot be subjected to the plaintiffs' demand for the excess.

It follows that the judgment of the circuit court must be reversed, and the cause remanded for further proceedings in conformity with this opinion. All concur.